PENDLETON, President,
(after observing that as all the Judges who sat in the cause were unanimous; those present thought there would be no impropriety in proceeding to judgment in the absence of Judge Roane,) delivered the resolution of the Court as follows:
Upon the 20th of November, 1749, William Davies entered with the Surveyor of Jlugusia county, for 300 acres of land, between Robert Davies’s land, and the land of the widow Bell. It, is stated, that Phillips purchased die entry of Robert Davies in 1753, and sold it to John *232 son in 1789. Of this, however, no proof is exhibited; but let it for the present be admitted, without making it a precedent. It is proved, that in October, 1789, Johnson purchased of William Davies his right to this entry, and be it also admitted, as stated, that he surveyed the land in dispute, under that entry, in 1790, and obtained a grant in 1792. - In January, 1753, a survey appears to have been made, for John Brown, grand-father of the appellee, of 230 acres, including the lands in dispute, on which it in said a patent issued in 1788, but it does not appear. Upon the 10th of June, 1770, Thomas Broion, father of the appellee, entered 400 acres, adjoining Phillips, his father’s old tract, and his own land. March 1st, 1775, he surveyed the 190 acres in dispute, correctly answering the description of his entry; and February 1st, 1781, obtained a grant for it. The present suit in Chancery was brought by Johnson, stating his equitable title to be prior and superior to Brown’s; and praying a decree that ho may convey the legal title. The bill was dismissed in Chancery, and from that dismission the appeal comes.
We first consider the case, on general principles, as a claim to set up an equitable interest in opposition to a legal title; in which ease, the plaintiff, to succeed, must shew a superiority of equity to the defendant, for, if it be equal only, the law must prevail.
We then contrast the equity of the parties:
Brown appears to have proceeded regularly, fairly and legally, to acquire a title to vacant lands, and has, without; fraud, obtained a patent. Johnson, on the other hand, appears to be a man searching for defects in his neighbors’ land titles; hunting up, and purchasing a stale, dormant claim, in order to disturb that title; and would rather seem to merit the penalty of the act against buying pretensed titles, than to be considered as a fair claimant in a Court of Equity. In this view then, here is no equity, set up against law and equity, and cannot prevail.
But, let us suppose Johnson had such an equity, as would, on a caveat prior to the grant, have entitled him to a preference; it would be no ground for a bill to set aside the patent, unless it had been suggested and proved, that he was prevented by fraud or accident from prosecuting a caveat. * On those grounds, this Court has sustain *233 ed bills of this sort, and enquired into the equilable preference, as if on a caveat; but to admit such bills in all cases, without even suggesting an excuse for not having entered a caveat, would be to transfer the whole caveating business from the Courts of Law, where the Legislature have placed it, into the Chancery; which this Court cannot give sanction to. It was foreseen by the Legislature, that there would be interfering entries and surveys; and the caveat was the remedy for settling all those disputes prior to the, patent, to avoid the inconvenience of that solemn instrument being involved in contests of that kind. *
But, we will gratify the plaintiff, as far as to suppose for the moment, that we were sitting in judgment on a caveat, entered by Johnson against Brown, to prevent the patent on his survey of 1775. Here Mr. Rundolph insisted, that the entry gave a legal title to the land. If so, why come into a Court of Equity ? But, it is not correct to say, the entry gave a legal title. An entry is the first legal step towards acquiring waste lands, and gives the person making it, if properly pursued, a preference to a grant, the true definition of an equitable interest. The survey is a progressive legal step; but, it is the grant, only, which passes the legal title.† However, the, counsel insisted that the title, whether legal or equitable, was to stand good, at all times, until notice given by the Surveyor, and a neglect on the part of the person making the entry: Which does not appear to have occurred in the present case. But, is there no period after which such notice, and a dereliction of the entry, shall be presumed? The law books abound with instances of similar presumptions, and we believe, that not a precedent, or reason, can be found, to induce a Court of Equity to give its aid to resuscitate an entry, which has slept for forty years, in order to disturb intervening legal titles, fairly obtained.
Again: To close the climax of defect in the plaintiff’s claim, the entry gave no title, at any time, to the land in dispute: Which will appear by recurring to the survey annexed to the record. That survey, the Court think admissible, not only as it comes to us, as a part of the record, without exception, but because it is authenticated by the Surveyor’s deposition. Without enquiry, whether the entry was too vague, between Davies and Bell, or whether *234 two distinct surveys could be made upon one entry; it is most obvious, that the land in dispute is not within the description of the entry, since it does not lie between Davies and Bell. The counsel supposed, that if a line were drawn, from Davies’s corner at B. to Bell’s at K. it would throw part of the land in dispute between the extreme points of that line, and satisfy the entry. This was ingenious, but not rational; since, as Bell’s land lay to the north-west of Davies’s, the entry must have the same position from Davies; and, therefore, it cannot be justifiable to go to the south-eastern corner of Davies’s land, in order to discover the space between that and Bell’s, which .would throw Davies’s land between the entry and Bell’s, instead of the entry lying between the other two. Surely, to draw lines from the extreme corners and lines of Davies to those of Bell, in the parts where they approach each other, is the way to discover the space between them. For instance, the lines D. E. and E. F. of Davies, and the lines J. K. of Bell, are the approximating lines. Then draw a line from D. or E. to K. and from F. to J. those lines will shew the space between those lands, and be the limits of the entry, which will not include a foot of the land in dispute. On every point, therefore, and every view of the case, the Court are unanimously, and without difficulty, of opinion, that the decree is right, and ought to be affirmed,, with costs.

[* Noland v. Cromwell, 4 Munf. 155; Christian’s devisee v. Christians et al. 6 Munf. 534; Lyne v. Jackson, 1 Rand. 114; Whittington et al. v. Christian et al. 2 Rand. 353.]

[* See amendment at Rev. 1819, Mar. 1819 c. 86, § 38, ed. 1819.]

[See Morrison v. Campbell et al. 2 Rand. 206.]